IN THE UNITED STATES BANKRUPTCY COURT **ORIGINAL**
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| GLOBAL POWER EQUIPMENT GROUP INC., et al., | Case No. 06-11045 (BLS) |
|  | Jointly Administered |
| Debtors. |  |
|  | Re: Docket No. 10 |

## FOURTH INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 363, 506 AND 552 AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING THE USE OF CASH COLLATERAL, AND (II) GRANTING RELATED RELIEF

Upon the motion, dated September 29, 2006 (the "Motion"),[1] of Global Power

Equipment Group Inc. and its affiliated debtors and debtors in possession (collectively, the

"Debtors") seeking, among other things, emergency use of cash collateral pursuant to sections

105, 361, 363, 506 and 552 of title 11 of the United States Code (11 U.S.C. §§ 101, et seq.) (the

"Bankruptcy Code"), as more fully set forth in the Motion; and the Court having entered an order

on October 2, 2006 authorizing the use of Cash Collateral through and including October 20,

2006 (the "Initial Interim Cash Collateral Order"); and the Court having entered an order on

October 23, 2006 authorizing the use of Cash Collateral through and including November 17,

2006 (the "Second Interim Cash Collateral Order"); and the Court having entered an order on

November 17, 2006 authorizing the use of Cash Collateral through and including December 1,

2006 (the "Third Cash Collateral Order"); and the Court having held a further hearing on the

Motion and the Debtors' continued use of Cash Collateral on December 4, 2006 (the "Hearing");

and sufficient notice of the Motion and the Hearing having been given by the Debtors; and it

---

[1]    Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

appearing from the record before the Court and after due deliberation that sufficient cause exists for the entry of this Order, the Court makes the following findings and enters its Order, all as set forth below:

## FINDINGS

A.      These cases were commenced by the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code on September 28, 2006 (the "Petition Date"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

B.      The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157(b) and 1334.

D.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

E.      On October 10, 2006, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Official Committee of Unsecured Creditors in these cases (the "Creditors' Committee").

F.      On November 9, 2006, the US Trustee appointed the Official Committee of Equity Security Holders in these cases (the "Equity Committee," and together with the Creditors' Committee, the "Committees").

G.      The Debtors acknowledge and agree that prior to the Petition Date, the Debtors obtained financing pursuant to that certain Credit Agreement, dated as of October 1, 2004 (as amended from time to time, the "Senior Credit Facility"), by and among Global Power Equipment Group Inc. ("Global Power"), certain subsidiaries of Global Power party thereto, as borrowers, and certain lenders from time to time party thereto, Bank of America, N.A (the "Administrative Agent"), as administrative agent, swing line lender and Letter of Credit issuer,

U.S. Bank National Association, as syndication agent, and Bank of Oklahoma, N.A., as managing agent (collectively, including, without limitation, Bank of America, N.A. in each of its capacities, including Letter of Credit issuer, the "Senior Lenders") in the aggregate amount of up to $100 million. The Debtors acknowledge and agree that the Senior Lenders assert claims under the Senior Credit Facility and/or other agreements (including hedging agreements) secured by substantially all of the Debtors' assets.

H.    The Debtors' use of Cash Collateral as provided herein is necessary to fund the Debtors' day-to-day operations and the administration of these chapter 11 cases.

I.    Given the purported encumbrances upon substantially all of the Debtors' assets, the Debtors require the continuation of the relief granted in connection with the Initial Interim Cash Collateral Order and further authorization to continue the use of Cash Collateral on the terms and subject to the conditions set forth herein.

J.    The Debtors have no cash or assets readily convertible into cash that are not subject to the asserted liens and security interests of the Administrative Agent on behalf of the Senior Lenders. Absent this Court's authorization to continue the use of Cash Collateral, the Debtors will suffer immediate and irreparable harm. The Debtors will be unable to meet payroll obligations as well as other ordinary course business expenditures that are essential to the Debtors' existence as a going concern.

K.    Prior to the commencement of these chapter 11 cases, the Debtors did not have the resources or opportunity to determine the validity, enforceability and perfection of the Senior Lenders' purported claims, liens and security interests, and nothing in this Order shall constitute an admission by the Debtors or either of the Committees with respect to such asserted claims, liens and security interests or any concession by the Administrative Agent or any Senior

Lender of any deficiency of any nature or type whatsoever with respect to any such claims, liens and security interests.

L.      Paragraph 7 of the Third Interim Cash Collateral Order required the Debtors to pay the Administrative Agent, for the benefit of itself and the Senior Lenders, the amounts of $208,832.82 (the "Adequate Protection Payment"), representing amounts due under the Senior Credit Facility as provided in the Third Interim Cash Collateral Order. The Debtors paid timely the Adequate Protection Payment to the Senior Lenders in accordance with the Third Interim Cash Collateral Order.

M.      Paragraphs 11 and 12 of the Third Interim Cash Collateral Order required the Debtors to provide to the Senior Lenders and the Creditors' Committee (or their respective designees) certain financial information in accordance with the Third Interim Cash Collateral Order, respectively (the "Financial Information"). The Debtors delivered timely the Financial Information to the Senior Lenders and the Creditors' Committee (or their respective designees) in accordance with the Third Interim Cash Collateral Order.

N.      In consideration of the consent of the Senior Lenders and the Committees to entry of this Order, the Debtors have agreed to further provide timely the Financial Information to the Senior Lenders and the Committees. Specifically, the Debtors have agreed that, during the Specified Period under the Cash Collateral Budget (as defined below), the Debtors shall provide to the Senior Lenders and the Committees (or their respective designees) the following information regarding the Debtors:

(i) a weekly report delivered on each Tuesday for the immediately

prior week (ending on Friday) reflecting actual figures against those set forth in the consolidating

budgets delivered to the Senior Lenders and the Committees which comprise the Consolidated

Budget for such weekly period; and

(ii) a current accounts receivable aging report to be delivered on each

Tuesday current through the immediately prior week (ending on Friday).

O. Additionally, the Debtors have agreed that on the Tuesday of every week

(for the immediately preceding week), the Debtors shall:

(i) provide the Administrative Agent's and Committees' financial

consultants with a verbal update regarding the status of the Braden Debtors and the Deltak

Debtors, including, without limitation:

(a) the status of Debtors' negotiations with the key customers
of the Braden Debtors and Deltak Debtors;

(b) the status of any settlements reached, broken down by
customer or project (if necessary), including, without limitation, any monetary
and other terms and conditions;

(c) the status of any negotiations with respect to the
termination of any project or any refusal by any customer to engage in
negotiations with respect to any project, including, without limitation, any
monetary and other terms, conditions, claims, or assertions of rights (including
any actual or threatened draw under any letter of credit); and

(d) a timetable for the conclusion of the negotiations, broken
down by customer or project (if necessary), and information regarding the
likelihood that any settlements will be reached;

(ii) provide the Administrative Agent's and Committees' financial

consultants with a verbal update regarding the operations of the Williams Group, including,

without limitation, information regarding:

(a) relationships with key customers since the Petition Date;

5

Case 06-11045-BLS    Doc 459    Filed 12/04/06    Page 6 of 19

(b)      the status of all new business (both contracts executed and negotiations in process);

(c)      any material project issues or significant over-runs identified since the Petition Date; and

(d)      any material receivables issues identified regarding the likelihood of collections or timing of payment; and

(iii)     provide the Administrative Agent's and Committees' financial consultants with a written update of the Debtors' debtor in possession financing efforts including, without limitation, potential lenders, the status of any negotiations, the terms contemplated, and the likely time frame.

P.      In connection with any future hearing on the Motion, the Debtors have agreed to comply with the following procedural requirements (except in an emergency situation requiring expedited relief from the Court):

(i)      any future requests to use the Cash Collateral shall be tied to a budget (in form substantially similar to the Cash Collateral Budget) for the period for which such use is required, and any such budget, along with the proposed terms of any such order, shall be served on the Administrative Agent, the Senior Lenders, and the Committees, at least seven days prior to any future hearing on the Motion; and

(ii)     Alvarez & Marsal and any other witness that the Debtors will rely upon in support of the Motion shall be required to be made available for discussion of the budget for the next period no sooner than two days after delivery to the Administrative Agent, the Senior Lenders, and the Committees of any extended budget and projections, and no later than two business days prior to any hearing on extended use of Cash Collateral.

Q.      By order dated October 3, 2006 (the "Braden Critical Vendor Order"), the Court authorized and approved the payment of certain critical vendors and/or subcontractors of

the Braden Group in accordance with the terms of the Braden Critical Vendor Order.

R.     By order dated October 5, 2006 (the "Deltak Critical Vendor Order"), the Court authorized and approved the payment of certain critical vendors and/or subcontractors of Deltak for its Specialty Boilers business in accordance with the terms of the Deltak Critical Vendor Order.

S.     The Senior Lenders have agreed to the interim relief provided herein in return for the adequate protection liens and other protections granted pursuant to the provisions of this Order.

## ORDER

Based on the foregoing, it is hereby ORDERED, ADJUDGED AND DECREED that:

1.     The Motion is granted to the extent set forth in this Order.

2.     The Debtors shall use and exhaust (pursuant to an approved budget) all Cash Collateral (including, but not limited to, cash constituting the proceeds, product or profits of any Prepetition Collateral, whether received prior to or after the Petition Date) other than the cash on deposit in the prepetition cash collateral account (the "Restricted Cash Collateral Account") with Bank of America, N.A. (the "Restricted Cash Collateral"). The Debtors may only use Restricted Cash Collateral (a) with the consent of the Senior Lenders (by the vote of the requisite percentage set forth in the Senior Credit Facility) and after providing contemporaneous written notice (and supporting detail) to the Committees of such request for consent from the Senior Lenders, together with a statement of the time by which such use of Restricted Cash Collateral is required (it being agreed by the Debtors, the Administrative Agent and the Senior Lenders that they will not oppose any request by either of the Committees for an expedited hearing and, unless otherwise agreed to by the Committees, the Debtors shall not use such

7

additional requested Restricted Cash Collateral until at least forty-eight (48) hours from delivery of such contemporaneous notice to the Committees), or (b) pursuant to further order of the Court after notice and a hearing in accordance with the procedures set forth in paragraph 5 hereof; provided, that if the Debtors certify that the relief requested is necessary to pay items contemplated by the Cash Collateral Budget (as defined below), the Administrative Agent and the Senior Lenders or the Committees shall not object on the ground that notice is inadequate as long as any hearing is set on not less than 48 hours actual notice to the Administrative Agent, the Committees and their respective counsel.

3.      Subject to the terms and conditions of this Order (but only subject to such terms and conditions), the Debtors may use Cash Collateral for the period (the "Specified Period") from the Petition Date through and including December 8, 2006. Except as otherwise expressly provided in this Order, Cash Collateral may be used solely (a) during the Specified Period, and (b) up to the amounts stated for any line item, during the periods and for the purposes identified in the consolidated budget (the "Consolidated Budget") attached hereto as Exhibit "A"; provided, that during any week in the Specified Period, the Debtors may spend up to 10% more than the aggregate amount set forth in the Consolidated Budget for such week, and that any amount in the Consolidated Budget (plus the 10% allowance) not spent in any week will be available during subsequent weeks prior to the expiration of the Specified Period; provided further, that (i) in addition to the foregoing, with respect to the Braden Group, in no event shall the Debtors' use of Cash Collateral exceed the amounts stated for any line item, during the periods and for the purposes identified in the Braden Group budget (the "Braden Budget" and collectively with the Consolidated Budget, the "Cash Collateral Budget") attached hereto as Exhibit "B", provided, that during any week in the Specified Period, the Debtors may spend up

8

to 10% more than the aggregate amount set forth in the Braden Budget for such week, and that
any amount in the Braden Budget (plus the 10% allowance) not spent in any week will be
available during subsequent weeks prior to the expiration of the Specified Period, and, provided
further, that, on a consolidated basis and for the Braden business unit level, in no week shall the
actual cumulative net cash flow activity exceed 110% of the peak budgeted net cash flow use for
the three week period consisting of the reforecasted final week of the prior operating budget plus
the two weeks in the current operating budget; however, in the event that the actual budgeted
expenditures for a budgetary month are less than the budgeted amount under an approved
budget, such unused budgeted expenditures may be carried over to the next budgetary month
(and, to the extent not entirely used in that next budgetary month, further may be carried over to
any and all budgetary months until so fully used), (ii) notwithstanding their inclusion in the Cash
Collateral Budget, the payments to certain Braden foreign vendors and/or subcontractors further
shall be subject to the restrictions and conditions set forth in paragraph 20 hereof, (iii) any
payment otherwise permitted to be made pursuant to the provisions of this Order to a Braden or
Deltak vendor or subcontractor consisting of the payment of any prepetition amounts made under
the Braden Critical Vendor Order or the Deltak Critical Vendor Order then in effect prior to any
such payment, shall otherwise fall within the authority granted pursuant to the Braden Critical
Vendor Order or the Deltak Critical Vendor Order, as applicable, then in effect, (iv) no payments
of prepetition claims shall be made to critical vendors and/or subcontractors of Deltak (other than
approved disbursements for its Specialty Boilers business) during the Specified Period (A)
absent consent of the Senior Lenders (by the vote of the requisite percentage set forth in the
Senior Credit Facility) and after providing contemporaneous written notice (and supporting
detail) to the Committees of such request for consent from the Senior Lenders, together with a

statement of the time by which such use of Cash Collateral is required (it being agreed by the Debtors, the Administrative Agent and the Senior Lenders that they will not oppose any request by either of the Committees for an expedited hearing and, unless otherwise agreed to by the Committees, the Debtors shall not use such additional requested Cash Collateral until at least forty-eight (48) hours from delivery of such contemporaneous notice to the Committees), or (B) further order of the Court, and (v) no payments will be made on account of prepetition attorneys' fees or costs.

4.      If Cash Collateral is not used for a particular line item in the Consolidated Budget or the Braden Budget, as applicable, during the period for which Cash Collateral usage is authorized for such line item in this Order, or if Cash Collateral is used in an amount less than specified in such line item during the budgeted period, then the Debtors may use the unused balance of such line item in other line items so long as the amounts expended with respect to such other line items shall not exceed the amounts budgeted therefor, provided with respect to the Debtors' use of Cash Collateral as reflected on the Braden Budget, the Debtors shall comply with the requirements of paragraph 3(b)(i) hereof notwithstanding the foregoing.

5.      The Debtors reserve the right to seek authority to use additional Cash Collateral beyond the amounts set forth herein during the Specified Period either (a) with the further written consent of the Senior Lenders (by the vote of the requisite percentage set forth in the Senior Credit Facility) and after providing contemporaneous written notice (and supporting detail) to the Committees of such request for consent from the Senior Lenders, together with a statement of the time by which such use of Cash Collateral is required (it being agreed by the Debtors, the Administrative Agent and the Senior Lenders that they will not oppose any request by either of the Committees for an expedited hearing and, unless otherwise agreed to by the

10

Committees, the Debtors shall not use such additional requested Cash Collateral until at least forty-eight (48) hours from delivery of such contemporaneous notice to the Committees), or (b) as may be further ordered by the Court after notice and a hearing. The Senior Lenders (by the vote of the requisite percentage set forth in the Senior Credit Facility) expressly reserve their right, in their sole and absolute discretion, to grant or withhold any such written consent, and the Administrative Agent expressly reserves any rights it may have under this Order, the Bankruptcy Code, or other applicable law to oppose any such relief. The Committees shall expressly retain any rights they may have under the Bankruptcy Code or other applicable law to oppose any such relief.

6.     Sections 361 and 363(e) of the Bankruptcy Code and for purposes of section 507(b) of the Bankruptcy Code, as adequate protection to the Senior Lenders for the Debtors' use of Cash Collateral and other use or diminution of the value of the collateral arising on account of the stay imposed under section 362 of the Bankruptcy Code and/or the use of Cash Collateral or other collateral, the Administrative Agent, on behalf of itself and the Senior Lenders, was granted pursuant to the Initial Interim Cash Collateral Order and continues to have by virtue of the Second Interim Cash Collateral Order, the Third Interim Cash Collateral Order and this Order a post-petition replacement lien on and security interest in all property, assets, interests in property, and rights of any kind and nature, of any Debtor, wherever located (other than actions under chapter 5 of the Bankruptcy Code), solely to the extent of any diminution of the value of the Prepetition Collateral, whether existing on the Petition Date or acquired or arising thereafter, which replacement lien and security interest shall be junior only to all valid, enforceable and perfected prior liens in existence as of the Petition Date or duly perfected after the Petition Date under section 362(b)(18) of the Bankruptcy Code. The liens and security

11

interests granted to the Senior Lenders pursuant to this paragraph shall be valid and perfected, as of the Petition Date, without the need for execution or filing of any further document or instrument otherwise required to be executed or filed under applicable non-bankruptcy law.

7.      With respect to any foreign currency swap or other hedging agreements with U.S. Bank, the Debtors are authorized without further order of the Court to terminate, or consent to the termination of, any such agreements upon entry of this Order.

8.      To the extent the Debtors use Cash Collateral of entities other than the Senior Lenders that hold valid, duly perfected, non-avoidable liens which are superior to all other liens on the relevant collateral ("Other Lienholders"), such entities shall be granted replacement liens on the proceeds of such Other Lienholders' collateral, to the extent of the diminution of value of such collateral, which replacement liens shall have the same priority, validity, force and effect as the lien that they replace; subject, however to all defenses, claims and counterclaims the Debtors may have against such liens or the claims underlying such liens.

9.      In the event any or all of the provisions of this Order are hereafter reversed, stayed, modified, amended, or vacated by a subsequent order of the Court or any other court, such reversal, stay, modification, amendment, or vacation shall not affect the validity of any right or obligation arising under this Order prior to the effective date of such modification, amendment or vacation, and such right or obligation shall be governed in all respects by the provisions of this Order.

10.     The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order in these cases (other than as set forth in paragraph 18 hereof), with respect to any of the Debtors or their respective estates, confirming any chapter 11 plan or converting any of the cases from chapter 11 to chapter 7, and the terms and provisions of this

Order, as well as the priorities (and applications) in payment, liens, and security interests granted pursuant to this Order, shall continue in these and any superseding cases under the Bankruptcy Code and such priorities (and applications) and payments, liens and security interests shall maintain their priority as provided by this Order.

11.     During the Specified Period under the Cash Collateral Budget, the Debtors shall:

(a)     take all reasonable actions necessary to safeguard the collateral from dissipation;

(b)     apply Cash Collateral and other sources of cash available to the Debtors hereunder to the expenses of operation of their businesses in all material respects as provided in the Cash Collateral Budget (as modified by this Order) and as otherwise permitted by this Order; and

(c)     remit all collections and other proceeds from collateral, whether arising from ordinary or non-ordinary course sales, from collections or otherwise, in the identical form received, whether cash, original checks, money orders, wire transfers or otherwise, on a daily basis to accounts designated by the Debtors.

12.     The Debtors shall cooperate fully with the Administrative Agent and Committees and their respective financial consultants with respect to the implementation of this Order. The Debtors shall grant such financial consultants and their representatives reasonable access to the books, records, personnel, premises and consultants of the Debtors (including information regarding their non-debtor affiliates in the Debtors' possession or within their reasonable control) during normal business hours and the Debtors and their consultants shall

13

cooperate with the Administrative Agent's and Committees' financial consultants with respect to any reasonable request for information, documentation and/or inspection relating to the operations of the Debtors (including information regarding their non-debtor affiliates in the Debtors' possession or within their reasonable control) and the collateral securing the Debtors' obligations to the Senior Lenders.

13.     Upon entry of this Order, to the extent any Senior Lender or any other bank has purportedly asserted an administrative freeze on any of the Debtors' accounts, such banks are directed to terminate such administrative freeze to permit the Debtors to use Cash Collateral consistent with this Order; provided, however, that no bank shall be required to honor any prepetition check and other matters (except for checks written on payroll accounts as authorized and directed to be paid pursuant to any separate order entered by this Court), and the maintenance and continuation of the prepetition cash management shall be governed, to the extent of any conflict with the provisions of this paragraph, by the provisions of the order of the Court, entered on October 3, 2006, approving the Debtors' cash management system.

14.     By agreeing to the entry of this Order, the Administrative Agent and the Senior Lenders do not intend to prejudice or limit any of their rights under the Bankruptcy Code, any agreement with or relating to any other creditor or party in interest, or other applicable law. Without limiting the generality of the preceding sentence, (a) the Senior Lenders, by consenting to the entry of this Order or otherwise, shall not be deemed to have consented, expressly or implicitly, to any surcharge of their collateral under or pursuant to section 506(c) of the Bankruptcy Code, and the Senior Lenders expressly reserve their rights to oppose any relief which may be sought by the Debtors, any trustee, any other estate representative, or any creditor or other party in interest with respect to surcharge of collateral pursuant to section 506(c) of the

14

Bankruptcy Code, and (b) the Senior Lenders' rights under section 507(b) or other priority provision of the Bankruptcy Code are not waived, but instead are expressly reserved, in the event that the relief provided herein proves inadequate and the Senior Lenders establish entitlement to a priority claim under section 507(b) or any other provision of the Bankruptcy Code, including with respect to the proceeds of any actions under chapter 5 of the Bankruptcy Code.

15.     This Order and the use of Cash Collateral authorized herein shall become effective immediately upon authorization and approval by the Court. Except with respect to the payment of accrued items set forth in the Cash Collateral Budget or unless terminated for cause (within the meaning of section 362(d)(1) of the Bankruptcy Code) on a prior date by another Order of this Court entered after notice and opportunity for a hearing, the use of Cash Collateral authorized herein shall terminate on December 11, 2006 at 12:00 midnight, Prevailing Eastern Time, subject to the Debtors' right pursuant to paragraph 5 hereof to seek further order of the Court authorizing use of Cash Collateral. Termination of the use of Cash Collateral authorized herein shall not impair the continuing effectiveness and enforceability of all other provisions in this Order.

16.     Within one business day after the entry of this Order, the Debtors shall serve a copy of this Order on all parties entitled to notice of this Order.

17.     Without in any manner prejudicing the right of the Administrative Agent and the Senior Lenders (including, without limitation, as to the scope, validity, or priority of their prepetition liens or their adequate protection lien granted pursuant to the Initial Cash Collateral Order and confirmed hereby and including under section 507(b) of the Bankruptcy Code), pursuant to section 364(c)(1) of the Bankruptcy Code, all intercompany claims between and among the Debtors arising after the Petition Date shall be accorded priority over any and all

administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, subject and subordinate to the priorities, liens, claims and security interests (including any claims arising under section 507(b) of the Bankruptcy Code) granted under this Order, in connection with any DIP facility or any other order granting adequate protection in favor of the Senior Lenders.

18.     Nothing in this Order or in the Consolidated Budget or Braden Budget (or any prior order or budget) shall conclusively establish the proper allocation of any particular expense to be borne by any specific Debtor. All rights with respect to the allocation of expenses among the Debtors are hereby expressly reserved.

19.     Consistent with Finding K above, the grant of adequate protection to the Administrative Agent and the Senior Lenders pursuant to this Order is specifically subject to any determination by this Court of (a) the validity, enforceability, and/or amount of the claims of the Administrative Agent and the Senior Lenders pursuant to the terms of the Senior Credit Facility, and (b) the validity, enforceability, and non-avoidability of the liens and security interests of the Administrative Agent, for the benefit of the Senior Lenders.

20.     With respect to Braden vendors and subcontractors (other than those supplying Braden's Consolidated Fabricators business, its Filters business, or its Retrofit business and other than Braden Mexico), the Debtors' right to use Cash Collateral as set forth on the Cash Collateral Budget for the Braden business group through the Specified Period is expressly conditioned upon the satisfaction of the following terms and conditions immediately preceding each transfer of Cash Collateral to a pertinent foreign vendor or subcontractor (the "Pertinent Foreign Subcontractor"):

(a)     When such Pertinent Foreign Subcontractor will ship only upon receipt of "cash in advance" or "cash on delivery," the Debtors shall have received from

such Pertinent Foreign Subcontractor its written agreement (a "Subcontractor Agreement") to the effect that such Pertinent Foreign Subcontractor shall be obligated to ship the subject part no later than immediately after its receipt of the subject payment, that such Pertinent Foreign Subcontractor shall not be entitled to and shall not suspend or otherwise delay such shipment for any reason whatsoever, including, without limitation, as a result of any other outstanding prepetition or post-petition invoice owing to it by any of the Debtors, and that such Pertinent Foreign Subcontractor shall not be entitled and shall not purport to offset or recoup against any obligations owing to it by any of the Debtors. Consistent with the foregoing, no Subcontractor Agreement will be required from any Pertinent Foreign Subcontractor that continues to ship and otherwise perform according to ordinary terms;

(b)       Where the pertinent customer is one of Braden's two largest customers as of the date hereof (a "Major Customer"), no shipment from a Pertinent Foreign Subcontractor on account of a pre-petition purchase order shall then be delivered to such Major Customer unless such Major Customer shall have entered into a written agreement with Braden acceptable to the Senior Lenders (by the vote of the requisite percentage set forth in the Senior Credit Facility) regarding such Major Customer's pre-petition orders, including as to the amount and timing of the payment of the balance of such Major Customer's pre-petition receivable (and the amount of any warranty claim permitted to be offset against any such pre-petition receivable) (a "Customer Agreement"), provided that a copy of any Customer Agreement shall be provided to the Committees contemporaneously with any delivery to the Senior Lenders as set forth herein. A Major Customer need not enter into a Customer Agreement with respect to any post-petition orders so long as (A) any such post-petition orders are on ordinary terms and (B) it has executed a Customer Agreement with respect to its pre-petition Orders;

(c)       No customer other than a Major Customer ("Other Customer") shall be required to enter into a Customer Agreement relating to any pre-petition or post-petition orders so long as they are not in default of their ordinary terms and such ordinary terms do not have payment terms longer than net 30 days;

(d)       The Pertinent Foreign Subcontractor shall not have repudiated, and shall not otherwise be in default of any of its obligations under, any Subcontractor Agreement it has executed and delivered to the Braden Debtors;

(e)       A Major Customer shall not have repudiated, and shall not otherwise be in default of any of its obligations under, any Customer Agreement it has executed and delivered to the Braden Debtors; and

(f)       No Other Customer shall be in default of its ordinary terms with respect to shipments on account of it Orders from such Pertinent Foreign Subcontractor;

provided however that any failure to satisfy the conditions set forth in subsections (b), (c), (e) and (f) shall only affect payments to a Pertinent Foreign Subcontractor under the agreements of

the Debtors relating to the non-complying Major Customer or Other Customer and shall not affect payments to such Pertinent Foreign Subcontractor under agreements with any other Major Customer or Other Customer that is in compliance with such conditions.

21.     The Administrative Agent on behalf of the Senior Lenders and the Committees may enforce the Debtors' compliance with their undertakings hereunder including those contained in paragraphs N and O by seeking relief from this Court on an expedited basis on notice to counsel to the Debtors, the Senior Lenders, the Committees and the Office of the United States Trustee.

22.     Any party seeking to object to entry of an order further approving the relief set forth herein or requested in the Motion, must file a written objection (an "Objection"), stating with particularity the grounds therefor, with the Court and serve such Objection on counsel to the Debtors, counsel to the Administrative Agent, counsel to the Creditors' Committee, counsel to the Equity Committee and the Office of the United States Trustee so that it is received no later than December 6, 2006 at 4:00 p.m., Prevailing Eastern Time.

23.     A final hearing to consider the Debtors' request for approval of the Motion shall be held on December 11, 2006 at 10:00 a.m. Prevailing Eastern Time, before the Court, although the scheduling of such a hearing shall not preclude the Debtors, the Administrative Agent or any other creditor or party in interest from seeking a continuance thereof.

24.     The Court shall retain jurisdiction over the parties with respect to the enforcement and interpretation of this Order.

25.     The relief granted in this Order shall be deemed effective as of the date of the entry of the Initial Interim Cash Collateral Order. Any conflict between the provisions of the

18

Initial Interim Cash Collateral Order, the Second Interim Cash Collateral Order, the Third

Interim Cash Collateral Order and the provisions of this Order shall be governed by the

provisions of this Order.

Dated:    Wilmington, Delaware
          December 4, 2006

BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE