## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| GLOBAL POWER EQUIPMENT GROUP INC., et al., | ) | Case No. 06-11045 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

### DISCLOSURE STATEMENT RELATING TO THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR GLOBAL POWER EQUIPMENT GROUP INC. AND ITS AFFILIATED DEBTORS

---

Dated: October 30, 2007

WHITE & CASE LLP
John K. Cunningham
Frank L. Eaton
Matthew C. Brown
Wachovia Financial Center
200 South Biscayne Boulevard, 49th Floor
Miami, Florida 33131
(305) 371-2700

THE BAYARD FIRM
Jeffrey M. Schlerf (No. 3047)
Eric M. Sutty (No. 4007)
Mary E. Augustine (No. 4477)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

ATTORNEYS FOR THE DEBTORS
AND DEBTORS IN POSSESSION

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE (THE "BANKRUPTCY COURT") UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE FOR USE IN THE SOLICITATION OF ACCEPTANCES OF THE PLAN DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISTRIBUTION OF THIS DISCLOSURE STATEMENT IS NOT INTENDED AND SHOULD NOT BE CONSTRUED AS A SOLICITATION OF ACCEPTANCES OF SUCH PLAN. THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THIS DISCLOSURE STATEMENT CONTAINS "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(a) OF THE BANKRUPTCY CODE.[1]

---

[1]    Legend to be removed upon entry by the Clerk of the Bankruptcy Court of an order of the Bankruptcy Court approving this Disclosure Statement.

## TABLE OF CONTENTS

Page

I. NOTICE TO HOLDERS OF CLAIMS AND EQUITY INTERESTS .......................................3

II. EXPLANATION OF CHAPTER 11 ...............................................................................5

    A.      Overview of Chapter 11.............................................................................5

    B.      Plan of Reorganization...............................................................................6

    C.      Confirmation of a Plan of Reorganization. ...............................................6

III. OVERVIEW OF THE PLAN..........................................................................................8

    A.      Summary of the Terms of the Plan. ...........................................................8

    B.      Summary of Distributions Under the Plan..................................................9

IV. GENERAL INFORMATION............................................................................................18

    A.      Overview of the Debtors............................................................................18

    B.      Business and Properties of the Debtors. ...................................................20

          1.      Core Business Operations. ...........................................................20

                a.      The Williams Group. .......................................................20

                b.      The Braden Group............................................................21

                c.      The Deltak Group. ...........................................................21

          2.      Debtors' Future Plans for Continuing Business Groups............23

          3.      Environmental Regulation. .........................................................24

                a.      General........................................................................24

                b.      Power Generation Equipment.........................................24

                c.      Industrial Services.........................................................25

          4.      Employees.....................................................................................25

          5.      Properties. ....................................................................................26

          6.      Management...................................................................................27

    C.      Events Leading to the Commencement of the Chapter 11 Cases. ..........31

V. CERTAIN AFFILIATE TRANSACTIONS.............................................................................33

    A.      Overview..............................................................................................................33

           1.      Centralized Cash Management. ..................................................33

           2.      Corporate Overhead. ..................................................................34

           3.      Treatment of Intercompany Claims under the Plan. ...................35

    B.      The Deltak Settlement..........................................................................................35

           1.      Overview.....................................................................................35

           2.      Settlement Process. .....................................................................36

            3.      Issues in Controversy..................................................................37

                  a.      Value of Deltak Assets...................................................37

                  b.      Allocation of Reorganization Costs. ..............................37

                  c.      The GPEG/Deltak Intercompany Cash Balance. ...........38

                  d.      The Settlements Relieve the Deltak Estate of Significant Obligations...................................................................39

                  e.      Fair Compromise. .........................................................40

            4.      Benefits of the Settlements. ........................................................40

            5.      The Settlements Comport with Rule 9019 Standards. ...............41

VI. FINANCIAL PROJECTIONS AND ASSUMPTIONS ...........................................................42

    A.      Purpose and Objectives.........................................................................................42

    B.      Projected Consolidated Financial Statements........................................................42

VII. THE REORGANIZATION CASES ......................................................................................43

    A.      Commencement of the Chapter 11 Cases. ............................................................43

    B.      Continuation of Business after the Petition Date...................................................44

           1.      Cash Collateral............................................................................44

           2.      Debtor in Possession Financing. .................................................45

           3.      Cash Management........................................................................47

4.      Employee-Related Matters...........................................................................47

5.      Maintenance of Utility Services..................................................................47

6.      Maintenance of Warranty Practices. ..........................................................48

7.      Payment of Prepetition Trust Fund Taxes and Governmental Fees. .........48

8.      Insurance. ...................................................................................................48

9.      Critical Vendors. ........................................................................................49

10.     Compliance With Sections 362 and 525 of the Bankruptcy Code.............49

11.     Interim Compensation and Reimbursement of Professional Persons
        and Committee Members.............................................................................50

12.     Joint Administration...................................................................................50

C.      Wind-Down of the HRSG Business Segment. ........................................................50

D.      Other Customer Accommodations...........................................................................52

E.      Representation of the Debtors..................................................................................53

F.      Formation and Representation of the Committees....................................................54

        1.      Official Committee of Unsecured Creditors. ..............................................54

        2.      Official Committee of Equity Securities Holders.......................................54

G.      Wind-Down of Additional Debtor and Affiliate Operations. ..................................55

H.      Matters Relating to Unexpired Leases and Executory Contracts. ...........................56

I.      Exclusivity Periods. .................................................................................................57

J.      The Automatic Stay. .................................................................................................59

K.      Trading Notification Procedures...............................................................................59

L.      Asset Sales. ...............................................................................................................60

M.      Key Employee Incentive Plan...................................................................................61

N.      Delisting of GPEG Stock. .........................................................................................61

O.      Schedules; Bar Dates; Claims Objections and Estimated Amount of Claims. .......62

        1.      Schedules and Bar Dates............................................................................62

MIAMI 699444 (2K)

2.    Claim Objections. ........................................................62

3.    Estimation of Claims.....................................................64

VIII. MATERIAL CLAIMS AND LITIGATION ...........................................65

A.    Noteholder Claims Litigation and Settlement..............................65

1.    Background. ..........................................................65

2.    Objection to Noteholder Claims. ......................................67

3.    Noteholder Settlement. ...............................................68

a.    Noteholder Claim Allowance. .....................................69

b.    Treatment of Noteholder Claims Under the Plan. ..................69

c.    Treatment of Noteholder Claims in connection with a Cramdown of the Plan. ..............................................70

d.    Treatment of Noteholder Allowed Claims Upon Occurrence of a Trigger Event. ................................................71

e.    Treatment of Noteholder Allowed Claims Upon Occurrence of Fiduciary Out. .................................................72

f.    Mutual Releases. ................................................72

B.    HRSG Customer Litigation – SNC/MHI. ....................................73

1.    SNC-Lavalin Power Ontario Inc.........................................73

2.    Mitsubishi. ..........................................................74

C.    WARN Act Claims. .......................................................76

IX. THE CHAPTER 11 PLAN.........................................................77

A.    Resolution of Certain Inter-Debtor Issues. ..............................77

1.    Formation of Debtor Groups............................................77

2.    Intercompany Claims and Equity Interest...............................78

B.    Classification and Treatment of Claims and Equity Interests..............78

1.    Administrative Claims and Tax Claims. .................................78

a.    Treatment of Administrative Claims. .............................78

|   |   | b. | Treatment of Tax Claims. | 80 |
|   | 2. | | GPEG Debtor Claims and Equity Interests. | 80 |
|   | 3. | | Williams Debtor Claims. | 82 |
|   | 4. | | Braden Debtor Claims. | 82 |
|   | 5. | | Deltak Claims. | 84 |
|   | 6. | | Deltak Construction Claims. | 85 |
| C. | | | Means for Implementation of the Plan. | 86 |
|   | 1. | | Operations between the Confirmation Date and the Effective Date. | 86 |
|   | 2. | | Corporate Action. | 86 |
|   | 3. | | Termination of Certain Debt Obligations. | 87 |
|   | 4. | | Continued Corporate Existence of the Debtors. | 87 |
|   | 5. | | Re-vesting of Assets. | 88 |
|   | 6. | | Management. | 88 |
|   | 7. | | Initial Boards of Directors. | 88 |
|   | 8. | | Officers. | 88 |
|   | 9. | | Management Incentive Plan. | 89 |
|   | 10. | | Causes of Action. | 89 |
|   | 11. | | Appointment of the Disbursing Agent. | 89 |
|   | 12. | | Sources of Cash for Plan Distributions. | 90 |
|   | 13. | | Investment of Funds Held by the Disbursing Agent; Tax Reporting by the Disbursing Agent. | 90 |
|   | 14. | | Releases by the Debtors. | 90 |
|   | 15. | | Releases by Creditors and Equity Security Holders. | 90 |
| D. | | | Settlements and Compromises. | 91 |
|   | 1. | | Noteholder Settlement. | 91 |
|   | 2. | | Deltak Plan Treatment. | 91 |

MIAMI 699444 (2K)

|        |    | 3.   | WARN Act Settlements. | 92 |
| E.     |    |      | Securities to Be Issued Under the Plan. | 93 |
|        |    | 1.   | Authorized Plan Securities. | 93 |
|        |    | 2.   | The New Common Stock. | 93 |
|        |    | 3.   | The Consideration Warrants. | 94 |
|        |    | 4.   | The Rights. | 94 |
| F.     |    |      | The Rights Offering. | 94 |
|        |    | 1.   | Issuance of Rights. | 94 |
|        |    | 2.   | Subscription Period. | 95 |
|        |    | 3.   | Subscription Price. | 95 |
|        |    | 4.   | Exercise of Subscription Rights. | 95 |
|        |    | 5.   | Transfer Restriction and Revocation of the Rights. | 95 |
|        |    | 6.   | Validity of Exercise of Subscription Rights. | 96 |
|        |    | 7.   | Proceeds from the Rights Offering. | 96 |
|        |    | 8.   | Plan Distribution of New Common Stock in the Rights Offering. | 96 |
| G.     |    |      | The Private Placement. | 97 |
|        |    | 1.   | Solicitation of Accredited Investors Only | 97 |
|        |    | 2.   | Commencement of the Private Placement. | 97 |
|        |    | 3.   | Expiration of the Private Placement. | 98 |
|        |    | 4.   | Allocation of the Private Placement Stock. | 98 |
|        |    | 5.   | Subscription Materials. | 98 |
|        |    | 6.   | Proceeds of the Private Placement. | 98 |
|        |    | 7.   | Plan Distribution of New Common Stock in the Private Placement. | 99 |
| H.     |    |      | Backstop Commitment. | 99 |
| I.     |    |      | Securities Law Matters in Implementing the Plan. | 99 |

MIAMI 699444 (2K)

1.  Plan Securities Issued Pursuant to Section 1145 of the Bankruptcy
    Code. ........................................................................................99

2.  Plan Securities Issued Pursuant to Section 4(2) and Regulation D of
    the Securities Act. ....................................................................101

3.  SEC Reporting Requirements. .................................................101

J.  The Deltak Plan Administrator. ...........................................................102

1.  Appointment of Deltak Plan Administrator. ............................102

2.  Powers and Duties of the Deltak Plan Administrator. .............102

3.  Compensation of the Deltak Plan Administrator. ....................103

4.  Exculpation of the Deltak Plan Administrator. ........................103

5.  Deltak Plan Distributions. .......................................................103

6.  Cooperation Between Deltak Plan Administrator and Disbursing
    Agent. .......................................................................................104

K.  Plan Distribution Provisions. ..............................................................104

1.  Plan Distributions. ...................................................................104

2.  Timing of Plan Distributions. ..................................................104

3.  Address for Delivery of Plan Distributions/Unclaimed Plan
    Distributions. ...........................................................................104

4.  De Minimis Plan Distributions. ...............................................105

5.  Time Bar to Cash Payments. ....................................................105

6.  Manner of Payment under the Plan. .........................................105

7.  Expenses Incurred on or after the Effective Date and Claims of the
    Disbursing Agent. ....................................................................105

8.  Fractional Plan Distributions. ..................................................106

9.  Special Plan Distribution Provisions for Equity Interests. .......106

10. Surrender and Cancellation of Instruments. ............................106

L.  Procedures For Resolving And Treating Contested Claims. ...............107

1.  Objection Deadline. .................................................................107

MIAMI 699444 (2K)

|  | 2. | Prosecution of Contested Claims. | 107 |
|  | 3. | Claims Settlement. | 107 |
|  | 4. | Entitlement to Plan Distributions Upon Allowance | 107 |
|  | 5. | Estimation of Claims | 107 |
| M. | | Conditions Precedent to Confirmation of the Plan and the Occurrence of the Effective Date. | 108 |
|  | 1. | Conditions Precedent to Confirmation | 108 |
|  | 2. | Conditions Precedent to the Occurrence of the Effective Date. | 109 |
|  | 3. | Waiver of Conditions. | 109 |
|  | 4. | Effect of Non-Occurrence of the Effective Date. | 110 |
| N. | | The Disbursing Agent. | 110 |
|  | 1. | Powers and Duties. | 110 |
|  | 2. | Plan Distributions. | 110 |
|  | 3. | Exculpation. | 110 |
| O. | | Treatment Of Executory Contracts And Unexpired Leases. | 111 |
|  | 1. | Assumption and Rejection of Executory Contracts and Unexpired Leases. | 111 |
|  | 2. | Cure. | 112 |
|  | 3. | Claims Arising from Rejection, Expiration or Termination. | 113 |
| P. | | Retention of Jurisdiction. | 113 |
| Q. | | Other Material Provisions of the Plan. | 115 |
|  | 1. | Payment of Statutory Fees. | 115 |
|  | 2. | Satisfaction of Claims. | 115 |
|  | 3. | Special Provisions Regarding Insured Claims. | 116 |
|  | 4. | Subrogation. | 116 |
|  | 5. | Third Party Agreements; Subordination. | 116 |
|  | 6. | Exculpation. | 117 |

MIAMI 699444 (2K)

7.    Discharge of Liabilities. ...........................................................117

8.    Discharge of Debtors. ..............................................................117

9.    Governing Law. ......................................................................118

10.    Interest and Attorneys' Fees. ....................................................118

11.    Modification of the Plan. ..........................................................118

12.    Revocation of Plan. .................................................................118

13.    Setoff Rights. .........................................................................119

14.    Rates.....................................................................................119

15.    Injunctions.............................................................................119

16.    Binding Effect. .......................................................................120

17.    Severability. ..........................................................................120

18.    No Admissions........................................................................120

X. RISK FACTORS ...............................................................................121

A.    General Considerations. ...........................................................121

B.    Certain Bankruptcy Considerations. ...........................................121

C.    Inherent Uncertainty of Financial Projections. ..............................121

D.    Claims Estimations. ................................................................122

XI. CONFIRMATION AND CONSUMMATION PROCEDURES ..........................122

A.    Overview...............................................................................122

B.    Confirmation of the Plan...........................................................124

1.    Elements of Section 1129 of the Bankruptcy Code. ...................124

2.    Acceptance.............................................................................125

3.    Best Interests Test. ..................................................................126

4.    Feasibility..............................................................................127

C.    Cramdown..............................................................................128

1.    No Unfair Discrimination. .........................................................128

ix

        2.       Fair and Equitable Test. ........................................................................128

    D.    Effect of Confirmation ........................................................................................129

XII. MANAGEMENT OF THE REORGANIZED DEBTORS.................................................129

XIII. CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES.......................................129

    A.    U.S. Federal Income Tax Consequences to the Debtors.......................................130

        1.       Cancellation of Debt Income. ...............................................................131

        2.       Accrued Interest. ...................................................................................131

        3.       Gain or Loss on Sale of Assets. ............................................................131

        4.       Utilization of Debtors' Net Operating Loss Carryforwards. ...................132

            a.       Limitation on NOL Carryforwards and Other Tax Attributes. ....132

            b.       General Section 382 Annual Limitation. .......................................132

            c.       Special Bankruptcy Exceptions. ...................................................132

    B.    Certain U.S. Federal Income Tax Consequences to the Holders of Claims
           that are Paid in Cash in Full. ...............................................................................133

    C.    U.S. Federal Income Tax Consequences to Holders of Deltak Class 5 –
           Unsecured Claims and GPEG Class 6A Equity Interests. ...................................133

XIV. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE
    PLAN ...........................................................................................................................135

    A.    Liquidation Under Chapter 7 of the Bankruptcy Code. .......................................135

    B.    Alternative Plans of Reorganization. ...................................................................135

XV. CONCLUSION ............................................................................................................137

## SCHEDULES AND EXHIBITS

List of Defined Terms .......................................................................................................... Schedule 1

List of the Debtors .............................................................................................................. Schedule 2

Schedule of Rejected Executory Contracts and Unexpired Leases ..................................... Schedule 3

Schedule of Assumed and Assumed and Assigned Executory Contracts and
    Unexpired Leases ........................................................................................................ Schedule 4

Chapter 11 Plan of Reorganization for Global Power and Its Affiliated Debtors ............. Exhibit "A"

Disclosure Statement Order ................................................................................................ Exhibit "B"

Liquidation Analysis .......................................................................................................... Exhibit "C"

Projections .......................................................................................................................... Exhibit "D"

**THE CREDITORS' COMMITTEE, THE EQUITY COMMITTEE AND THE NOTEHOLDERS CONTINUE TO REVIEW THE DEBTORS' PROPOSED DISCLOSURE STATEMENT AND RELATED PLAN AND RESERVE ALL RIGHTS WITH RESPECT THERETO.**

## INTRODUCTION

BY ORDER DATED OCTOBER __, 2007 (THE "DISCLOSURE STATEMENT ORDER"), THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE (THE "BANKRUPTCY COURT") APPROVED THE DISCLOSURE STATEMENT RELATING TO THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR GLOBAL POWER EQUIPMENT GROUP INC. AND ITS AFFILIATED DEBTORS (THE "DISCLOSURE STATEMENT") FILED BY AND WITH RESPECT TO THE CHAPTER 11 DEBTORS LISTED IN SCHEDULE 2 HERETO (THE "DEBTORS").[2]  THE DISCLOSURE STATEMENT INCLUDES AND DESCRIBES THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR GLOBAL POWER EQUIPMENT GROUP INC. AND ITS AFFILIATED DEBTORS, DATED OCTOBER 30, 2007 (THE "PLAN"), A COPY OF WHICH IS ATTACHED HERETO AS EXHIBIT "A".  OTHER THAN GPEG DEBTOR CLASS 1 – PRIORITY CLAIMS, GPEG DEBTOR CLASS 3 – UNSECURED CLAIMS, GPEG DEBTOR CLASS 6B – OTHER GPEG DEBTOR EQUITY INTERESTS, WILLIAMS DEBTOR CLASS 1 – PRIORITY CLAIMS, WILLIAMS DEBTOR CLASS 3 – UNSECURED CLAIMS, WILLIAMS DEBTOR CLASS 4 – EQUITY INTERESTS, BRADEN DEBTOR CLASS 1 – PRIORITY CLAIMS, BRADEN DEBTOR CLASS 4 – UNSECURED CLAIMS, BRADEN DEBTOR CLASS 5 – EQUITY INTERESTS, DELTAK CLASS 1 – PRIORITY CLAIMS, DELTAK CLASS 6 – EQUITY INTERESTS, DELTAK CONSTRUCTION CLASS 1 – PRIORITY CLAIMS, DELTAK CONSTRUCTION CLASS 4 – UNSECURED CLAIMS, AND DELTAK CONSTRUCTION CLASS 5 – EQUITY INTERESTS, WHICH ARE UNIMPAIRED UNDER THE PLAN AND ARE THEREFORE DEEMED TO HAVE ACCEPTED THE PLAN, ALL CLASSES ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.  ACCORDINGLY, EXCEPT FOR THE FOREGOING UNIMPAIRED CLAIMS AND EQUITY INTERESTS, THE DEBTORS ARE SOLICITING ACCEPTANCES OF THE PLAN FROM ALL OTHER HOLDERS OF ALL CLAIMS AND INTERESTS.

THE DEBTORS BELIEVE THAT THE PLAN IS IN THE BEST INTEREST OF AND PROVIDES THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO HOLDERS OF ALL CLAIMS AND EQUITY INTERESTS.  ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE URGED TO VOTE IN FAVOR OF THE PLAN.

VOTING INSTRUCTIONS ARE CONTAINED IN THE DISCLOSURE STATEMENT ORDER, A TRUE AND CORRECT COPY OF WHICH IS ATTACHED HERETO AS EXHIBIT "B".  IN ADDITION, THE SOLICITATION PACKAGE ACCOMPANYING EACH OF THE BALLOTS CONTAINS APPLICABLE VOTING INSTRUCTIONS.  **TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED, EXECUTED AND**

---

[2]     The Debtors are listed on Schedule 2, attached hereto, but for ease of reference, the Debtors consist of the following entities:  Global Power Equipment Group Inc., Global Power Professional Services, L.L.C., Braden Manufacturing, L.L.C., Braden Construction Services, Inc., Deltak, L.L.C., Deltak Construction Services, Inc., Williams Industrial Services Group, L.L.C., Williams Industrial Services, LLC, Williams Specialty Services, LLC, Williams Plant Services, LLC, and WSServices, LP.

ACTUALLY RECEIVED BY 4:00 P.M. (PREVAILING EASTERN TIME), ON
DECEMBER 13, 2007 (THE "VOTING DEADLINE").

     FOR YOUR ESTIMATED PERCENTAGE RECOVERY UNDER THE PLAN,
PLEASE SEE THE CHART SET OUT IN "OVERVIEW OF THE PLAN – SUMMARY OF
DISTRIBUTIONS UNDER THE PLAN," BELOW.

     **All capitalized terms used in the Disclosure Statement and not defined herein shall
have the meanings ascribed thereto in the Plan (see Exhibit "A" to the Plan, Glossary of
Defined Terms). For ease of reference, all defined terms used in the Disclosure Statement
that are not defined in the Plan are listed on Schedule 1 to this Disclosure Statement with
reference to the page number where the term is defined. Unless otherwise stated, all
references herein to "Schedules" and "Exhibits" are references to schedules and exhibits to
this Disclosure Statement, respectively.**

I.

## NOTICE TO HOLDERS OF CLAIMS AND EQUITY INTERESTS

     The purpose of this Disclosure Statement is to enable you, as a creditor whose Claim is
impaired under the Plan or as a stockholder whose Equity Interest is impaired under the Plan, to
make an informed decision in exercising your right to accept or reject the Plan. See
"Confirmation and Consummation Procedures."

     **THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION
THAT MAY BEAR UPON YOUR DECISION TO VOTE TO ACCEPT OR REJECT
THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE.**

     **PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE
STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE
PLAN AND THE EXHIBITS ANNEXED TO THE PLAN. THE STATEMENTS
CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE
DATE HEREOF AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS
CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE
HEREOF. IN THE EVENT OF ANY CONFLICT BETWEEN THE DESCRIPTION SET
FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN,
THE TERMS OF THE PLAN SHALL GOVERN.**

     **THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE
WITH SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, 11 U.S.C. §§
101, ET SEQ. (THE "BANKRUPTCY CODE"), AND RULE 3016(b) OF THE FEDERAL
RULES OF BANKRUPTCY PROCEDURE (THE "BANKRUPTCY RULES") AND NOT
NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW
OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS
BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND
EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE
ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

**PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF GPEG OR ANY OF ITS SUBSIDIARIES AND AFFILIATES SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, GPEG OR ANY OF ITS SUBSIDIARIES AND AFFILIATES, DEBTORS AND DEBTORS IN POSSESSION IN THESE CASES.**

On October __, 2007, after notice and a hearing, the Bankruptcy Court entered the Disclosure Statement Order pursuant to section 1125 of the Bankruptcy Code, finding that it contains information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of the solicited classes of Claims and Equity Interests of the Debtors to make an informed judgment with respect to the acceptance or rejection of the Plan. **APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT OF THE FAIRNESS OR MERITS OF THE PLAN OR OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.**

Each holder of a Claim or Equity Interest entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting. No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. Except for the Debtors and certain of the professionals they have retained, no person has been authorized to use or promulgate any information concerning the Debtors, their businesses, or the Plan other than the information contained in this Disclosure Statement and if given or made, such information may not be relied upon as having been authorized by the Debtors. You should not rely on any information relating to the Debtors, their businesses or the Plan other than that contained in this Disclosure Statement and the Exhibits hereto.

After carefully reviewing this Disclosure Statement, including the attached Schedules and Exhibits, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed ballot and return the same to the address set forth on the ballot, in the enclosed, postage prepaid, return envelope so that it will be actually received by AlixPartners, LLP or Financial Balloting Group LLC, as applicable, (collectively, the "Solicitation Agent"), no later than the Voting Deadline. All votes to accept or reject the Plan must be cast by using the appropriate ballot. Votes which are cast in any other manner will not be counted. **All ballots must be actually received by the Solicitation Agent no later than December 13, 2007 at 4:00**

**p.m., Prevailing Eastern Time. For detailed voting instructions and the name, address and phone number of the person you may contact if you have questions regarding the voting procedures, see the Disclosure Statement Order attached hereto as Exhibit "B".**

<b>DO NOT RETURN ANY OTHER DOCUMENTS WITH YOUR BALLOT.</b>

You will be bound by the Plan if it is accepted by the requisite holders of Claims and Equity Interests and confirmed by the Bankruptcy Court, even if you do not vote to accept the Plan, or if you are the holder of an unimpaired Claim. See "Confirmation and Consummation Procedures."

**Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan (the "Confirmation Hearing") on December 20, 2007, at 1:00 p.m., Prevailing Eastern Time, before the Honorable Brendan L. Shannon, United States Bankruptcy Judge. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed and served on or before December 13, 2007, in the manner described in the Disclosure Statement Order attached hereto as Exhibit "B".**

**THE DEBTORS URGE ALL HOLDERS OF IMPAIRED CLAIMS AND EQUITY INTERESTS TO ACCEPT THE PLAN.**

II.

<b><u>EXPLANATION OF CHAPTER 11</u></b>

**A.      Overview of Chapter 11.**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code pursuant to which a debtor in possession may reorganize its business for the benefit of its creditors, stockholders, and other parties in interest. The Debtors commenced chapter 11 cases (the "Chapter 11 Cases") with the filing by the Debtors of petitions for voluntary protection under chapter 11 of the Bankruptcy Code on September 28, 2006 (the "Petition Date"). By order of the Bankruptcy Court, the Chapter 11 Cases have been consolidated for administrative purposes and are jointly administered under Case No. 06-11045 (BLS).

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor in possession as of the date the petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee. In the Chapter 11 Cases, each Debtor remains in possession of its property and continues to operate its businesses as a debtor in possession. See "The Reorganization Cases – Continuation of Business after the Petition Date."

The filing of a chapter 11 petition triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, among other things, for an automatic stay of all attempts by creditors or other third parties to collect prepetition claims from the debtor or otherwise interfere with its property or business. Exempted from the automatic stay

are governmental authorities seeking to exercise regulatory or policing powers. Except as otherwise ordered by the bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization. In the Chapter 11 Cases, no creditor or party in interest has obtained relief from the automatic stay, except for Edward and Sandra Kosmider. See "The Reorganization Cases – The Automatic Stay."

The formulation of a plan of reorganization is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying the holders of claims against and interests in the debtor's estate. Unless a trustee is appointed, only the debtor may file a plan during the first 120 days of a chapter 11 case (the "Filing Period"), and the debtor will have 180 days to solicit acceptance of such plan (the "Solicitation Period"). However, section 1121(d) of the Bankruptcy Code permits the bankruptcy court to extend or reduce the Filing Period and Solicitation Period upon a showing of "cause." The Filing Period and Solicitation Period may not be extended beyond 18 months and 20 months, respectively, from the Petition Date. As set forth below in "The Reorganization Cases – Exclusivity Periods," the Debtors' Filing Period and Solicitation Period have been extended pursuant to an agreement between the Debtors, the Committees, and the Noteholders, and the Debtors filed the Plan within the applicable Filing Period. As the Debtors filed the Plan during the Filing Period, no other creditor or party in interest may file a plan until the expiration of the Solicitation Period. See "The Reorganization Cases – Exclusivity Periods."

**B.     Plan of Reorganization.**

Although referred to as a plan of reorganization, a plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In either event, upon confirmation of the plan, it becomes binding on the debtor and all of its creditors and equity holders, and the prior obligations owed by the debtor to such parties are compromised and exchanged for the obligations specified in the plan. For a description of key components of the Plan, see "Overview of the Plan," below.

After a plan of reorganization has been filed, the holders of impaired claims against and equity interests in a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the debtor to prepare and file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. **This Disclosure Statement is presented to holders of Claims against and Equity Interests in the Debtors to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the Debtors' solicitation of votes on the Plan.**

**C.     Confirmation of a Plan of Reorganization.**

If all classes of claims and equity interests accept a plan of reorganization, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied. See "Confirmation and Consummation Procedures – Confirmation of the Plan." **The Debtors believe that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code.**

Chapter 11 of the Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a plan of reorganization for the bankruptcy court to determine that the class has accepted the plan. See "Confirmation and Consummation Procedures."

In addition, classes of claims or equity interests that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Furthermore, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan. See "Confirmation and Consummation Procedures." Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class. **Except for GPEG Debtor Class 1 – Priority Claims, GPEG Debtor Class 3 – Unsecured Claims, GPEG Debtor Class 6B – Other GPEG Debtor Equity Interests, Williams Debtor Class 1 – Priority Claims, Williams Debtor Class 3 – Unsecured Claims, Williams Debtor Class 4 – Equity Interests, Braden Debtor Class 1 – Priority Claims, Braden Debtor Class 4 – Unsecured Claims, Braden Debtor Class 5 – Equity Interests, Deltak Class 1 – Priority Claims, Deltak Class 6 – Equity Interests, Deltak Construction Class 1 – Priority Claims, Deltak Construction Class 4 – Unsecured Claims, and Deltak Construction Class 5 – Equity Interests, which are unimpaired, all classes of Claims and Equity Interests are impaired under the Plan and entitled to vote on the Plan.**

With the exception of Deltak and Deltak Construction, the Plan contemplates the grouping of all the Debtors into three separate Debtor Groups: the GPEG Debtors, the Williams Debtors, and the Braden Debtors. Each Debtor Group is treated as a single Estate solely for purposes of voting (where applicable) on the Plan, confirmation of the Plan and determining treatment of and making distributions in respect of Claims against and Equity Interests in such Debtor Group. For each Debtor that is able to satisfy the requirements of sections 1129(a)(8) and/or (10) of the Bankruptcy Code on a standalone basis, provided that all other requirements to confirmation of the Plan are met, the inclusion of such Debtor into the applicable Debtor Group will be deemed to occur by operation of the Plan. If a Debtor is unable to satisfy the requirements of sections 1129(a)(8) and/or (10) of the Bankruptcy Code on a standalone basis, the inclusion of such Debtor into the applicable Debtor Group will be subject to a determination of the Bankruptcy Court that such inclusion is appropriate under applicable standards, which determination may be made at the Confirmation Hearing. Accordingly, for purposes of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code with respect to each Debtor, the Debtors will tabulate votes on an individual Debtor basis and to the extent relevant and appropriate as determined by the Bankruptcy Court, on a Debtor Group basis. See "Confirmation and Consummation Procedures – Confirmation of the Plan – Acceptance."

In general, a bankruptcy court also may confirm a plan of reorganization even though fewer than all the classes of impaired claims against and equity interests in a debtor accept such plan. For a plan of reorganization to be confirmed, despite its rejection by a class of impaired claims or equity interests, the plan must be accepted by at least one class of impaired claims (determined without counting the vote of insiders) and the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan. See "Confirmation and Consummation Procedures – Cramdown." **The Plan has been**

**structured so that it will satisfy the foregoing requirements for each of the Debtors as to any rejecting class of Claims or Equity Interests, and can therefore be confirmed, if necessary, over the objection of any (but not all) classes of Claims or Equity Interests.**

## III.

## OVERVIEW OF THE PLAN

The Plan provides for the treatment of Claims against and Equity Interests in all of the Debtors in Jointly Administered Case Nos. 06-11045 (BLS) through 06-11055 (BLS).

**A.  Summary of the Terms of the Plan.**

The Plan is built around the following key elements:

- The Debtors' businesses will continue to be operated in substantially their current form, with the Deltak Debtors continuing to operate their specialty boiler ("Specialty Boiler") business segment and wind down their heat recovery steam generator ("HRSG") business segment.

- As set forth in "Certain Affiliate Transactions" below, GPEG and its Debtor affiliates have utilized a centralized cash management system whereby cash received by GPEG's operating subsidiaries is transferred to GPEG's cash accounts and subsequently transferred from GPEG to its subsidiaries to meet operating needs. GPEG has also maintained a corporate overhead function through which it has provided shared services to its subsidiaries. Pursuant to the Deltak Plan Treatment, if Deltak Class 5 – Unsecured Claims votes to accept the Plan, the Bankruptcy Court establishes the Deltak Plan Reserve or the Bankruptcy Court approves the Alternative Deltak Settlement (all as described in Section 9.2 of the Plan), then any and all Intercompany Claims by and between Deltak and any other Debtor as of the Effective Date shall be forever waived, discharged, released and enjoined, and GPEG shall retain all of its Equity Interests in Deltak.

- The Plan treats the Estates of certain Debtor Groups as comprising a single Estate solely for purposes of voting on the Plan, confirmation of the Plan and making Plan Distributions in respect of Claims against and Equity Interests in such Debtors under the Plan. Global Power Equipment Group Inc. and Global Power Professional Services, L.L.C. shall comprise the GPEG Debtor Group; Williams Industrial Services Group, L.L.C., Williams Industrial Services, LLC, Williams Specialty Services, LLC, Williams Plant Services, LLC, and WSServices, LP shall comprise the Williams Debtor Group; and Braden Manufacturing, L.L.C. and Braden Construction Services, Inc. shall comprise the Braden Debtor Group. The Estates of Deltak, L.L.C. and Deltak Construction Services, Inc. shall not be treated as comprising a single Estate.

- As set forth in Sections 5.4(f) and 9.2 of the Plan, holders of Allowed Unsecured Claims against Deltak, L.L.C., if they vote to accept the Plan, will receive a Pro Rata Share of (i) $34,000,000 in Cash, (ii) the Deltak Avoidance Actions Recoveries, (iii) the Deltak Warranty Recoveries, and (iv) the GPEG Indemnity

Recoveries, not to exceed the Allowed amount of such Claims. If the Deltak Class 5 – Unsecured Claims vote to reject the Plan, the holders of Allowed Claims in such Class may receive a Pro Rata Share of (i) the Deltak Plan Reserve as determined by the Bankruptcy Court, or (ii), in the event the Deltak Plan Reserve is not established, a Pro Rata Share of $30,000,000 in Cash, if approved by the Bankruptcy Court. A Deltak Plan Administrator will be selected by the Creditors' Committee and shall administer the Deltak Plan Assets and the treatment accorded holders of Allowed Unsecured Claims against Deltak, L.L.C.

- On the Effective Date, all Equity Interests in GPEG shall be cancelled, and each holder of a GPEG Equity Interest shall receive on the Plan Distribution Date: (i) one share of New Common Stock in New GPEG for each share of common stock of GPEG owned by such holder, and (ii) its Ratable Proportion of Rights to acquire New Common Stock in New GPEG in accordance with the Rights Offering described in Article X of the Plan.

- A Settlement Agreement with holders of 100% of the Debtors' issued and outstanding prepetition Subordinated Notes, whereby the Noteholders have agreed to support the Plan in exchange for the allowance of the Subordinated Note Claims in the aggregate amount of $89.7 million, and a Cash payment of $86 million, which shall be distributed pro rata to holders of Allowed Subordinated Note Claims based on the Allowed amount of such Claims. As part of the Noteholder Settlement, the Debtors have also agreed to pay certain post-petition interest to the Noteholders, and to reimburse certain legal fees and costs.

- On or before the Effective Date, New GPEG will enter into the Exit Facility, which is generally expected to provide for (a) a $10 million revolving credit facility, (b) a $50 million term loan, and (c) a $50 million letter of credit facility. New GPEG will also issue New Senior Notes on or about the Effective Date in the expected amount of $50 million, and such New Senior Notes are generally expected to have a maturity of six (6) years and a coupon of 12.5%. The proceeds of the Exit Facility, the New Senior Notes, and proceeds from the Rights Offering and Private Placement described in Article X of the Plan shall be available for use by New GPEG and its subsidiaries to make Plan Distributions to the holders of certain Allowed Claims against the Debtors and to satisfy general working capital requirements of New GPEG and its direct and indirect subsidiaries on and after the Effective Date, including cash collateralizing, replacing or securing with new letters of credit any outstanding letters of credit issued under the DIP Credit Agreement.

## B.    Summary of Distributions Under the Plan.

The following is a summary of the distributions under the Plan. It is qualified in its entirety by reference to the full text of the Plan, which is attached to this Disclosure Statement as Exhibit "A". In addition, for a more detailed description of the terms and provisions of the Plan, see "The Chapter 11 Plan," below.

The claim amounts set forth below are based on information contained in the Debtors' Schedules and filed proofs of claim, and reflect what the Debtors believe to be reasonable estimates of the likely resolution of currently outstanding disputed Claims. The amounts utilized

may differ materially from the outstanding filed Claim amounts. As discussed below, the Debtors have filed a substantial number of objections to disputed Claims. See "The Reorganization Cases – Schedules; Bar Date; Claims Objection and Estimation Procedures."

The following chart summarizes the estimated Plan Distributions to each class on the Plan Distribution Date (unless otherwise provided):

### Administrative and Tax Claims

| Classes of Claims[3] | Treatment of Classes of Claims |
|---|---|
| Administrative Claims<br>Estimated Allowed Claims: $27,147,348 | On the Plan Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment, or (ii) such other treatment as may be agreed upon in writing by the Debtors and such holder; provided, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; provided, further, that an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Debtors' election in the ordinary course of business.<br><br>The DIP Claims shall be Allowed Administrative Claims on the Effective Date and shall be paid in Cash in full on the Effective Date. On the Effective Date, in accordance with the terms of the DIP Credit Agreement, any outstanding letters of credit issued under the DIP Credit Agreement shall be cash collateralized, replaced or secured with letters of credit issued under the Exit Facility.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Tax Claims<br>Estimated Allowed Claims: $400,912 | At the election of the Debtors, each holder of an Allowed Tax Claim shall receive in full satisfaction of such holder's Allowed Tax Claim, (a) the amount of such holder's Allowed Tax Claim, with Post-Confirmation Interest thereon, in equal annual Cash payments on each anniversary of the Effective Date, until the sixth anniversary of the date of assessment of such Tax Claim (provided that the Debtors may prepay the balance of any such Allowed Tax Claim at any time without penalty); (b) a lesser amount in one Cash payment as may be agreed upon in writing by such holder; or (c) such other treatment as may be agreed upon in writing by such holder; provided, that |

---

[3]      Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively. Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

|  | such agreed-upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim. |
|  | **Estimated Recovery: 100% of Allowed Claim** |

### GPEG Debtor Claims and Equity Interests

| Classes of Claims | Treatment of Classes of Claims |
|---|---|
| Class 1 – Priority Claims<br>Estimated Allowed Claims: $15,000<br><br>Unimpaired | Each holder of an Allowed Priority Claim against any of the GPEG Debtors shall be paid on the Plan Distribution Date in full in Cash with Post-Petition Interest from the Petition Date through the Effective Date.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 2 – Secured Claims<br>Estimated Allowed Claims: $2,220<br><br>Impaired | Each holder of an Allowed Secured Claim against any of the GPEG Debtors will, at the sole option of the Debtors, receive the following treatment: (i) shall receive on the Plan Distribution Date on account of its Allowed Secured Claim a Cash payment in an amount equal to the amount of the Allowed Secured Claim as of the Effective Date, (ii) shall retain its liens securing its Allowed Secured Claim and receive on account of its Allowed Secured Claim deferred cash payments having a present value on the Effective Date equal to the amount of its Allowed Secured Claim, (iii) shall realize the "indubitable equivalent" of its Allowed Secured Claim, (iv) the property securing the Allowed Secured Claim shall be sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds as provided in clause (ii) or (iii) of this subparagraph, or (v) if such Allowed Secured Claim is subject to a valid right of recoupment or setoff, such Claim shall be setoff to the extent of the amount subject to setoff in accordance with sections 506(a) and 553 of the Bankruptcy Code.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 3 – Unsecured Claims<br>Estimated Allowed Claims: $10,576,320[4]<br><br>Unimpaired | Each holder of an Allowed Unsecured Claim (other than a Subordinated Note Claim, WARN Act (Individual) Claim or WARN Act (Putative Class) Claim) against any of the GPEG Debtors shall be |

---

[4]     This amount includes guaranty claims in the approximate amount of $6.3 million.  Pursuant and subject to Section 18.4 of the Plan, if and when GPEG pays an Allowed Guarantee Claim, then GPEG will be subrogated to

(continued  )

| | |
|---|---|
| | paid on the Plan Distribution Date in full in Cash with Post-Petition Interest from the Petition Date through the Effective Date. |
| | **Estimated Recovery: 100% of Allowed Claim** |
| Class 4 – Subordinated Note Claims<br>Estimated Allowed Claims: $89,700,000[5]<br><br>Impaired | Each holder of a Subordinated Note Claim shall receive on the Effective Date, in full satisfaction of such holder's Allowed Subordinated Note Claim, Cash equal to its Pro Rata Share of the Noteholder Settlement Amount in accordance with the Noteholder Settlement Agreement. |
| | **Estimated Recovery: 96% of Allowed Claim** |
| Class 5A – WARN Act (Individual) Claims<br>Estimated Allowed Claims: $551,874<br><br>Impaired | Each holder of an Allowed WARN Act (Individual) Claim against any of the GPEG Debtors shall receive on the Plan Distribution Date, in full satisfaction of such holder's Allowed WARN Act (Individual) Claim, Cash equal to the WARN Act (Individual) Settlement Amount. |
| | **Estimated Recovery: 100% of Allowed Claim** |
| Class 5B – WARN Act (Putative Class) Claims<br>Estimated Allowed Claims: $131,468<br><br>Impaired | Each holder of an Allowed WARN Act (Putative Class) Claim against any of the GPEG Debtors shall receive on the Plan Distribution Date, in full satisfaction of such holder's Allowed WARN Act (Putative Class) Claim, Cash equal to the WARN Act (Putative Class) Settlement Amount. |
| | **Estimated Recovery: 100% of Allowed Claim** |
| Class 6A – Equity Interests<br>Estimated Allowed Equity Interests: N/A<br><br>Impaired | On the Effective Date, all Equity Interests in GPEG shall be cancelled, and each holder of a GPEG Equity Interest shall receive on the Plan Distribution Date: (i) one share of New Common Stock in New GPEG for each share of common stock of GPEG owned by such holder, and (ii) its Ratable Proportion of Rights to acquire New Common Stock in New GPEG in accordance with the Rights Offering described in Article X of the Plan. All Equity Interests in GPEG which Equity Interests are either unexercised or unvested as of the Voting Record Date (and therefore are not included in the definition of GPEG Equity Interests) shall be cancelled on the Effective Date, and the holders of such unexercised or unvested Equity Interests shall neither receive nor |

( continued)

the rights of the holder of such Allowed Guarantee Claim to collect and receive a Plan Distribution on account of such Claim from the Debtor that is the primary obligor of the guaranteed obligation.

[5]       Although the Subordinated Note Claims have been asserted against each of the GPEG Debtors, the Braden Debtors, and the Deltak Debtors, the Subordinated Note Claims will be entitled to only one satisfaction.

| | retain any property under the Plan on account of such unexercised or unvested Equity Interests unless the Bankruptcy Court orders otherwise. |
|---|---|
| | **Estimated Recovery: Undetermined** |
| Class 6B – Other GPEG Equity Interests<br>Estimated Allowed Equity Interests: N/A<br><br>Unimpaired | Each Allowed Equity Interest in the GPEG Debtors (other than GPEG) shall be fully reinstated and retained on and after the Effective Date.<br><br>**Estimated Recovery: Undetermined** |

### Williams Debtor Claims

| Classes of Claims | Treatment of Classes of Claims |
|---|---|
| Class 1 – Priority Claims<br>Estimated Allowed Claims: $7,000<br><br>Unimpaired | Each holder of an Allowed Priority Claim against any of the Williams Debtors shall be paid on the Plan Distribution Date in full in Cash with Post-Petition Interest from the Petition Date through the Effective Date.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 2 – Secured Claims<br>Estimated Allowed Claims: $0<br><br>Impaired | Each holder of an Allowed Secured Claim against any of the Williams Debtors will, at the sole option of the Debtors, receive the following treatment: (i) shall receive on the Plan Distribution Date on account of its Allowed Secured Claim a Cash payment in an amount equal to the amount of the Allowed Secured Claim as of the Effective Date, (ii) shall retain its liens securing its Allowed Secured Claim and receive on account of its Allowed Secured Claim deferred cash payments having a present value on the Effective Date equal to the amount of its Allowed Secured Claim, (iii) shall realize the "indubitable equivalent" of its Allowed Secured Claim, (iv) the property securing the Allowed Secured Claim shall be sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds as provided in clause (ii) or (iii) of this subparagraph, or (v) if such Allowed Secured Claim is subject to a valid right of recoupment or setoff, such Claim shall be setoff to the extent of the amount subject to setoff in accordance with sections 506(a) and 553 of the Bankruptcy Code.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 3 – Unsecured Claims<br>Estimated Allowed Claims: $444,747<br><br>Unimpaired | Each holder of an Allowed Unsecured Claim against any of the Williams Debtors shall be paid on the Plan Distribution Date in full in Cash with Post-Petition Interest from the Petition Date through the Effective Date.<br><br>**Estimated Recovery: 100% of Allowed Claim** |

| Class 4 – Equity Interests<br>Estimated Allowed Equity Interests: N/A<br><br>Unimpaired | Each Allowed Equity Interest in any of the Williams Debtors shall be fully reinstated and retained on and after the Effective Date.<br><br>**Estimated Recovery: Undetermined** |

### Braden Debtor Claims

| Classes of Claims | Treatment of Classes of Claims |
|---|---|
| Class 1 – Priority Claims<br>Estimated Allowed Claims: $0<br><br>Unimpaired | Each holder of an Allowed Priority Claim against any of the Braden Debtors shall be paid on the Plan Distribution Date in full in Cash with Post-Petition Interest from the Petition Date through the Effective Date.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 2 – Secured Claims<br>Estimated Allowed Claims: $0<br><br>Impaired | Each holder of an Allowed Secured Claim against any of the Braden Debtors will, at the sole option of the Debtors, receive the following treatment: (i) shall receive on the Plan Distribution Date on account of its Allowed Secured Claim a Cash payment in an amount equal to the amount of the Allowed Secured Claim as of the Effective Date, (ii) shall retain its liens securing its Allowed Secured Claim and receive on account of its Allowed Secured Claim deferred cash payments having a present value on the Effective Date equal to the amount of its Allowed Secured Claim, (iii) shall realize the "indubitable equivalent" of its Allowed Secured Claim, (iv) the property securing the Allowed Secured Claim shall be sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds as provided in clause (ii) or (iii) of this subparagraph, or (v) if such Allowed Secured Claim is subject to a valid right of recoupment or setoff, such Claim shall be setoff to the extent of the amount subject to setoff in accordance with sections 506(a) and 553 of the Bankruptcy Code.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 3 – Subordinated Note Guarantee Claims<br>Estimated Allowed Claims: $89,700,000<br><br>Impaired | Each holder of an Allowed Subordinated Note Guarantee Claim shall receive on the Effective Date, in full satisfaction of such holder's Allowed Subordinated Note Guarantee Claim, the treatment provided holders of Allowed Subordinated Note Claims under Section 5.1(d) of the Plan (GPEG Debtor Class 4 – Subordinated Note Claims) in accordance with the Noteholder Settlement.<br><br>**Estimated Recovery: 96% of Allowed Claim** |

| | |
|---|---|
| Class 4 – Unsecured Claims<br>Estimated Allowed Claims: $4,050,397<br><br>Unimpaired | Each holder of an Allowed Unsecured Claim (other than a Subordinated Note Guarantee Claim) against the Braden Debtors shall be paid on the Plan Distribution Date in full in Cash with Post-Petition Interest from the Petition Date through the Effective Date.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 5 – Equity Interests<br>Estimated Allowed Equity Interests: N/A<br><br>Unimpaired | Each Allowed Equity Interest in the Braden Debtors shall be fully reinstated and retained on and after the Effective Date.<br><br>**Estimated Recovery: Undetermined** |

## Deltak Claims

| Classes of Claims | Treatment of Classes of Claims |
|---|---|
| Class 1 – Priority Claims<br>Estimated Allowed Claims: $0<br><br>Unimpaired | Each holder of an Allowed Priority Claim against Deltak shall be paid on the Plan Distribution Date in full in Cash with Post-Petition Interest from the Petition Date through the Effective Date.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 2 – Secured Claims<br>Estimated Allowed Claims: $2,062,874<br><br>Impaired | Each holder of an Allowed Secured Claim against Deltak will, at the sole option of the Debtors, receive the following treatment: (i) shall receive on the Plan Distribution Date on account of its Allowed Secured Claim a Cash payment in an amount equal to the amount of the Allowed Secured Claim as of the Effective Date, (ii) shall retain its liens securing its Allowed Secured Claim and receive on account of its Allowed Secured Claim deferred cash payments having a present value on the Effective Date equal to the amount of its Allowed Secured Claim, (iii) shall realize the "indubitable equivalent" of its Allowed Secured Claim, (iv) the property securing the Allowed Secured Claim shall be sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds as provided in clause (ii) or (iii) of this subparagraph, or (v) if such Allowed Secured Claim is subject to a valid right of recoupment or setoff, such Claim shall be setoff to the extent of the amount subject to setoff in accordance with sections 506(a) and 553 of the Bankruptcy Code.<br><br>**Estimated Recovery: 100% of Allowed Claim** |

| | |
|---|---|
| Class 3 – Subordinated Note Guarantee Claims<br>Estimated Allowed Claims: $89,700,000<br><br>Impaired | Each holder of an Allowed Subordinated Note Guarantee Claim against Deltak shall receive on the Effective Date, in full satisfaction of such holder's Allowed Subordinated Note Guarantee Claim, the treatment provided holders of Allowed Subordinated Note Claims under Section 5.1(d) of the Plan (GPEG Debtor Class 4 – Subordinated Note Claims) in accordance with the Noteholder Settlement.<br><br>**Estimated Recovery: 96% of Allowed Claim** |
| Class 4A – WARN Act (Individual) Claims<br>Estimated Allowed Claims: $551,874<br><br>Impaired | Each holder of an Allowed WARN Act (Individual) Claim against Deltak shall receive on the Plan Distribution Date, in full satisfaction of such holder's Allowed WARN Act (Individual) Claim, Cash equal to the WARN Act (Individual) Settlement Amount.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 4B – WARN Act (Putative Class) Claims<br>Estimated Allowed Claims: $131,468<br><br>Impaired | Each holder of an Allowed WARN Act (Putative Class) Claim against Deltak shall receive on the Plan Distribution Date, in full satisfaction of such holder's Allowed WARN Act (Putative Class) Claim, Cash equal to the WARN Act (Putative Class) Settlement Amount.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 5 – Unsecured Claims<br>Estimated Allowed Claims: $25,954,798[6]<br><br>Impaired | If Deltak Class 5 accepts the Plan, each holder of an Allowed Unsecured Claim (other than a Subordinated Note Guarantee Claim, a WARN Act (Individual) Claim or a WARN Act (Putative Class) Claim) against Deltak shall receive on the applicable Plan Distribution Date(s) determined by the Deltak Plan Administrator in accordance with Article XI of the Plan and the Deltak Plan Treatment set forth in Section 9.2(a) of the Plan its Pro Rata Share of (i) the Deltak Settlement Amount of $34,000,000 in Cash (as described in Section 9.2(a) of the Plan), (ii) the Deltak Avoidance Actions Recoveries, (iii) the Deltak Warranty Recoveries, and (iv) and the GPEG Indemnity Recoveries. |

---

[6]     As discussed in more detail below, the Debtors have been in the process of winding down the operations of the HRSG business segment of the Deltak Debtors and, in connection therewith, performing under various agreements entered into post-petition for the completion of certain HRSG projects. Notably, these agreements provide for initial caps on the maximum amount of rejection damage claims and step downs of these caps over time based upon either "date certain" step downs or Deltak's achievement of performance milestones on the projects. A significant number of these milestones have already been achieved and the Debtors believe that they will be successful in achieving all of the remaining milestones set forth in such agreements. As of October 30, 2007, the total amount of Unsecured Claims is approximately $97 million. Substantially all of these claim amounts relate to two HRSG projects that are subject to such agreements. If all milestones are achieved under the agreements, the stepped down aggregate claim cap will be approximately $2,538,800.

| | If Deltak Class 5 rejects the Plan and the Deltak Plan Reserve is established on the Effective Date in accordance with Section 9.2(b) of the Plan, each holder of an Allowed Unsecured Claim (other than a Subordinated Note Guarantee Claim, a WARN Act (Individual) Claim or a WARN Act (Putative Class) Claim) against Deltak shall receive on the applicable Plan Distribution Date(s) determined by the Deltak Plan Administrator in accordance with Article XI of the Plan and the Deltak Plan Treatment set forth in Section 9.2(b) of the Plan its Pro Rata Share of the Deltak Plan Reserve (as described in Section 9.2(b) of the Plan) determined by the Bankruptcy Court; or, if Deltak Class 5 rejects the Plan and the Deltak Plan Reserve is not established in accordance with Section 9.2(b) of the Plan, each holder of an Allowed Unsecured Claim (other than a Subordinated Note Guarantee Claim, a WARN Act (Individual) Claim or a WARN Act (Putative Class) Claim) against Deltak shall receive on the applicable Plan Distribution Date(s) determined by the Deltak Plan Administrator in accordance with Article XI of the Plan and the Deltak Plan Treatment set forth in Section 9.2(c) of the Plan its Pro Rata Share of the Alternative Deltak Settlement Amount of $30,000,000 in Cash.<br><br>**Estimated Recovery: Undetermined** |
|---|---|
| Class 6 – Equity Interests<br>Estimated Allowed Equity Interests: N/A<br><br>Unimpaired | Each Allowed Equity Interest in Deltak shall be fully reinstated and retained on and after the Effective Date.<br><br>**Estimated Recovery: Undetermined** |

### Deltak Construction Claims

| Classes of Claims | Treatment of Classes of Claims |
|---|---|
| Class 1 – Priority Claims<br>Estimated Allowed Claims: $0<br><br>Unimpaired | Each holder of an Allowed Priority Claim against Deltak Construction shall be paid on the Plan Distribution Date in full in Cash with Post-Petition Interest from the Petition Date through the Effective Date.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 2 – Secured Claims<br>Estimated Allowed Claims: $0<br><br>Impaired | Each holder of an Allowed Secured Claim against Deltak Construction will, at the sole option of the Debtors, receive the following treatment: (i) shall receive on the Plan Distribution Date on account of its Allowed Secured Claim a Cash payment in an amount equal to the amount of the Allowed Secured Claim as of the Effective Date, (ii) shall retain its liens securing its Allowed Secured Claim and receive on account of its Allowed Secured Claim |

| | deferred cash payments having a present value on the Effective Date equal to the amount of its Allowed Secured Claim, (iii) shall realize the "indubitable equivalent" of its Allowed Secured Claim, (iv) the property securing the Allowed Secured Claim shall be sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds as provided in clause (ii) or (iii) of this subparagraph, or (v) if such Allowed Secured Claim is subject to a valid right of recoupment or setoff, such Claim shall be setoff to the extent of the amount subject to setoff in accordance with sections 506(a) and 553 of the Bankruptcy Code.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
|---|---|
| Class 3 – Subordinated Note Guarantee Claims<br>Estimated Allowed Claims: $89,700,000<br><br>Impaired | Each holder of an Allowed Subordinated Note Guarantee Claim against Deltak Construction shall receive on the Effective Date, in full satisfaction of such holder's Allowed Subordinated Note Guarantee Claim, the treatment provided holders of Allowed Subordinated Note Claims under Section 5.1(d) of the Plan (GPEG Debtor Class 4 – Subordinated Note Claims) in accordance with the Noteholder Settlement.<br><br>**Estimated Recovery: 96% of Allowed Claim** |
| Class 4 – Unsecured Claims<br>Estimated Allowed Claims: $169,708<br><br>Unimpaired | Each holder of an Allowed Unsecured Claim (other than a Subordinated Note Guarantee Claim) against Deltak Construction shall be paid on the Plan Distribution Date in full in Cash with Post-Petition Interest from the Petition Date through the Effective Date.<br><br>**Estimated Recovery: 100% of Allowed Claim** |
| Class 5 – Equity Interests<br>Estimated Allowed Equity Interests: N/A<br><br>Unimpaired | Each Allowed Equity Interest in Deltak Construction shall be fully reinstated and retained on and after the Effective Date.<br><br>**Estimated Recovery: Undetermined** |

## IV.

## <u>GENERAL INFORMATION</u>

The discussion below briefly describes the Debtors and their businesses as they exist as of the date of this Disclosure Statement.

### A.    Overview of the Debtors.

The Debtors consist of GPEG and all of its U.S. subsidiaries.  The Debtors' non-U.S. subsidiaries have not filed for chapter 11 protection in the U.S., or commenced bankruptcy

proceedings outside of the U.S.  The Debtors' non-U.S. subsidiaries are Global Power Equipment Group International, Braden Power Equipment (Shanghai) Co., Ltd., Global Power Asia Limited, Deltak Power Equipment (China) Co. Ltd., Braden-Europe B.V., Braden Manufacturing, S.A. de C.V., and Deltak B.V.[7]  GPEG, together with its Debtor and non-Debtor affiliates (the "Company"), provides power generation equipment to customers in the domestic and international energy and power infrastructure industries, and routine and specialty maintenance services to customers in the utility and industrial sectors.  The Company's corporate headquarters are located in Tulsa, Oklahoma, with additional facilities located in Plymouth, Minnesota; Tulsa, Oklahoma; Auburn, Massachusetts; Stone Mountain, Georgia; Monterrey, Mexico; Shanghai, China; Nanjing, China; and Heerlen, The Netherlands.  The organizational chart below illustrates the structure of GPEG and its subsidiaries as of the date of this Disclosure Statement.

### GLOBAL POWER EQUIPMENT GROUP INC.
#### Organization Chart



---

[7]      Global Power Equipment Group Brazil LTDA and Deltak Israel Ltd. have been dissolved or are in the process of being dissolved.

B.     **Business and Properties of the Debtors.**

1.     <u>**Core Business Operations.**</u>

The Debtors operate under GPEG through three primary business groups, which are referred to as the Williams Group, the Braden Group, and the Deltak Group.  Each of these business groups is described below.

a.     *The Williams Group.*

The Williams Group operates an industrial services business through Williams Industrial Services Group, L.L.C. ("Williams") and its three wholly owned subsidiaries, Williams Industrial Services, LLC, Williams Specialty Services, LLC, and Williams Plant Services, LLC.  Each company in the Williams Group is directly or indirectly wholly owned by GPEG and headquartered in Stone Mountain, Georgia.[8]

The Williams Group provides routine and specialty maintenance services, outage management, and overhaul of power facilities to a diversified group of utilities and industrial customers whose operations include nuclear, fossil and hydroelectric power plants and pulp and paper mills.  The Williams Group also provides similar services to various government agencies, primarily as a subcontractor to the United States Department of Energy.  The services provided by the Williams Group include industrial painting and coating, removal of hazardous materials, industrial insulation, repair and replacement of roofing systems and nuclear, fossil fuel and hydroelectric power plant maintenance.  These services are generally provided pursuant to long-term contracts spanning several years, and are provided on a constant presence basis as well as a discrete project basis.

There is a growing trend in the industrial maintenance industry towards outsourcing to independent service providers, which has resulted in an increase in the number of customers and markets served by the Williams Group.  The Williams Group has developed longstanding relationships with utility and industrial customers such as The Southern Company, the Jacksonville Electric Authority, Florida Power & Light, Tennessee Valley Authority, Energy Northwest, Exelon Nuclear, Consolidated Edison, Mead Westvaco and Smurfit Stone.  The Debtors expect that the demand for the services provided by the Williams Group will remain strong over the next several years.

The Williams Group has been GPEG's most profitable business segment since its acquisition in 2005.  The Williams Group's performance in 2006 resulted in its best performance since 2003 as it generated $176,202,000 in revenue.  The increase in revenue helped the Williams Group maintain its steady performance as it generated $12,754,000 in earnings before interest and taxes ("EBIT") for the year.  This consistent performance has continued into 2007 as the Williams Group generated $101,091,000 in revenues and $7,793,000 in EBIT for the first five months of the year.

---

[8]     The Williams Group also includes WSServices, LP, a California limited partnership that is 99%-owned by Williams Specialty Services, LLC, its general partner, and 1%-owned by Williams Plant Services, LLC, its limited partner.  WSServices, LP is a Debtor entity that is not currently operating and has no assets.

**b.    *The Braden Group.***

The Braden Group operates an auxiliary power equipment supply business through Braden Manufacturing, L.L.C. ("Braden"), Braden Construction Services, Inc., and non-debtor affiliates Braden Power Equipment (Shanghai) Co. Ltd., Braden-Europe B.V., and Braden Manufacturing S.A. de C.V. Each company in the Braden Group is directly or indirectly wholly owned by GPEG. The Braden Group's headquarters are in Tulsa, Oklahoma.

The Braden Group designs, engineers and manufactures a wide range of equipment primarily consisting of components for gas turbine power plants. The equipment is manufactured and marketed under the Braden and Consolidated Fabricators[9] brand names, and includes products such as filters, enclosures, air intake housings and exhaust systems for gas turbines. Design and engineering work for the Braden Group's equipment is done primarily by the Braden Group. The equipment is manufactured through a combination of in-house manufacturing at the Company's factories in the United States and Mexico and through extensive outsourcing relationships with third-party manufacturers around the world.

The Braden Group submits fixed-price competitive contract bids for substantially all of its projects. Bid amounts are based on the projected cost of completing a project. Actual costs, however, may vary from projections as a result of unanticipated changes in, among other things, freight, raw material and labor costs.

The Braden Group has been GPEG's second most profitable business segment in the recent past. It has developed longstanding relationships with some of the world's largest participants in the gas turbine manufacturing industry, including GE Energy, Mitsubishi Power Systems, Siemens Power Generation and ALSTOM.

Despite significant and unexpected increases in various costs, including freight costs and associated fuel surcharges and the price of steel, the Braden Group's EBIT in 2006 was approximately $5,282,000. The Braden Group's operations following the Petition Date have continued to be profitable. Specifically, for the first five months of 2007, the Braden Group's EBIT was approximately $4,536,000.

**c.    *The Deltak Group.***

The Deltak Group operates a heat recovery equipment supply business through Deltak, L.L.C. ("Deltak"), Deltak Construction Services, Inc., and non-debtor affiliate Deltak B.V. Former non-debtor affiliates of Deltak, Global Power Asia Limited ("GPA") and Deltak Power Equipment (China) Co. Ltd. ("DPEC"), were recently sold.[10] See "The Reorganization Cases – Asset Sales." Each company in the Deltak Group is directly or indirectly wholly owned by GPEG, except for DPEC, which is a 90%-owned subsidiary of GPA. The Deltak Group's headquarters are in Plymouth, Minnesota.

---

[9]    Consolidated Fabricators, Inc. was merged into Braden Manufacturing, L.L.C., one of the Debtors, on June 28, 2004.

[10]    The Deltak Group also operated through Global Power Equipment Group Brazil LTDA and Deltak Israel Ltd., both of which have been either dissolved or are in the process of being dissolved.

The Deltak Group designs, engineers and manufactures custom or project-specific equipment used to enhance the efficiency of gas turbine power plants. Prior to the Petition Date, the Deltak Group's products consisted primarily of HRSGs, specialty boilers, and industrial boilers[11] that were sold under the Deltak brand name. These products were produced through a combination of in-house manufacturing at the Deltak Group's factories in the United States and China and through extensive outsourcing relationships around the world. The Deltak Group had developed longstanding relationships with some of the world's largest participants in the gas turbine manufacturing industry.

Between January 1, 2005 and the Petition Date, the Deltak Group posted net losses of approximately $36,750,000. These losses were attributable to the Deltak Group's HRSG business segment, which historically operated on narrow margins. The Deltak Group's Specialty Boiler business segment realized approximately $12,600,000 in profit over that time period.

Immediately prior to the Petition Date, the Deltak Group made the strategic decision to wind down operations of the Deltak Group's HRSG business segment and sought and received authority from the Bankruptcy Court to accomplish the wind-down. Since the Petition Date, the HRSG business segment operations have been limited to the completion of certain existing HRSG projects on a cash-neutral basis (a detailed discussion of the Deltak Group's HRSG business operations and the wind-down process is provided below in "The Reorganization Cases – Wind-Down of the HRSG Business Segment").

Further, in 2007 GPEG made a strategic decision to sell its DPEC operations. As such, the operating results for DPEC are not considered in the Deltak Group's ongoing operations for 2007. The Debtors executed an agreement related to the sale of the DPEC operations and the Bankruptcy Court entered an order approving the sale agreement on October 10, 2007. The sale closed on or about October 17, 2007. See "The Reorganization Cases – Asset Sales."

The Specialty Boiler business segment is the remaining ongoing operation of the Deltak Group due to the strategic decisions to wind down the HRSG business segment and sell its DPEC operations. This operating line has been reorganized to operate as a standalone business which primarily resulted in reorganizing the back office operations of the Deltak Group's operations in the United States and reducing the size of it corporate office. The Specialty Boiler business segment encountered minimal disruptions from these strategic changes and its customers and vendors continue to support the business as indicated by its profitable operating performance since the Petition Date.

The Deltak Group's Specialty Boiler business segment engineers and manufactures custom boilers used in hydrogen plants, incinerators, fluidized catalytic cracking

---

[11]        HRSGs are boilers that create steam in a combined-cycle power plant using the heat from the exhaust emitted by a gas turbine to create steam; specialty boilers capture waste heat and convert it into steam, and are used in process heat recovery and incineration systems, small power generation systems and marine co-generation systems; and industrial boilers produce steam and heat for various industrial and commercial applications. The industrial boilers are produced by DPEC, a non-debtor affiliate of GPEG.